OPINION
This action in prohibition is presently before this court for final consideration of the merits, based on the parties' stipulations of fact and briefs. After reviewing the parties' various arguments in light of the undisputed facts, we conclude that Judge Gary L. Yost ("Judge Yost") of the Ashtabula County Court of Common Pleas, respondent, has acted beyond the scope of his authority in the underlying case. Thus, a writ of prohibition shall be issued in favor of Ashtabula County Prosecutor Thomas L. Sartini ("Prosecutor Sartini"), the Andover Township Trustees, and the Ashtabula County Board of Commissioners, relators.[1]
 I.
Our review of the parties' stipulations of fact indicates that the factual foundation of this action is fairly straightforward. In the late 1990's, a dispute arose between the Andover Township Trustees and Ashtabula County Auditor Sandra O'Brien ("Auditor O'Brien") concerning the taxation of recreational vehicles which are parked for a sustained period in a local campground. In September 1997, Prosecutor Sartini received an opinion from the Ohio Attorney General as to whether such vehicles could be taxed as either real property or a manufactured home. Prosecutor Sartini forwarded a copy of this opinion to both the Andover Township Trustees and Auditor O'Brien.
One month later, the Andover Township Trustees requested Prosecutor Sartini to advise them concerning whether Auditor O'Brien's prior tax determinations in regard to the recreational vehicles had been consistent with the Attorney General's opinion on the matter. The Andover Township Trustees also asked if Prosecutor Sartini would act as their counsel in any possible action against Auditor O'Brien. In response, Prosecutor Sartini recommended that the Trustees have a meeting with Auditor O'Brien to discuss the nature of the analysis she employed in determining the tax status of the recreational vehicles.
Although a meeting between these two parties was subsequently held, the taxation dispute could not be settled amicably. As a result, the Andover Township Trustees filed a mandamus action in the Ashtabula County Court of Common Pleas against Auditor O'Brien in October 1998. For their relief in that action, the Trustees sought the issuance of an order requiring Auditor O'Brien to tax the recreational vehicles as real property on the basis that the vehicles had become permanent fixtures on the property. Prior to initiating the mandamus action, the Trustees retained private counsel to represent them in that matter.
Ten days after the filing of the mandamus action, Prosecutor Sartini sent a letter to Auditor O'Brien in which he stated that his office was prepared to represent her against the Andover Township Trustees. However, Prosecutor Sartini also informed Auditor O'Brien that he had discussed the taxation issue with the Trustees at the time the opinion of the Attorney General had been released. In addition, he told Auditor O'Brien that, at one point, he had answered the Trustees' questions as to what their legal options were against her. Based upon this, Prosecutor Sartini concluded his letter by indicating that Auditor O'Brien had the option of asking for the appointment of separate counsel to represent her in the mandamus action.
Although Auditor O'Brien never expressly told Prosecutor Sartini that she wanted him to act as her attorney, she did request that he file a motion for an extension of time in which to file her answer to the mandamus petition. After moving for the extension, Prosecutor Sartini filed an answer in behalf of Auditor O'Brien. He then represented her at two status conferences which were held before Judge Yost.
After the mandamus action had been pending for one year, Auditor O'Brien sent Prosecutor Sartini a letter in which she asked him to take the necessary steps to have separate counsel appointed to represent her. Auditor O'Brien stated that she believed that Prosecutor Sartini had taken certain actions against her in other matters and that a conflict of interest existed. She also noted that, in his prior letter, Prosecutor Sartini had given her the option of obtaining new counsel.
In his written response to the O'Brien letter, Prosecutor Sartini indicated that he did not believe that the appointment of separate counsel was necessary because a conflict of interest no longer existed. Upon receiving this response, Auditor O'Brien filed in the pending mandamus action a motion for the substitution of counsel. This motion was submitted in her behalf by private counsel whom she had recently hired.
Once Prosecutor Sartini had filed a brief in opposition to the O'Brien motion, an oral hearing on the matter was held before Judge Yost. Based upon the evidence and arguments presented during that proceeding, Judge Yost issued a judgment in May 2000, granting the motion for substitution of counsel. At the outset of his analysis, Judge Yost held that Prosecutor Sartini had acted ethically in representing Auditor O'Brien because he had informed her of the potential conflict when the mandamus action was initiated. Despite this, Judge Yost ultimately held that allowing the substitution of counsel was in the best interests of justice because Auditor O'Brien had indicated that she had lost her confidence in Prosecutor Sartini.
Immediately following the release of the foregoing judgment, Prosecutor Sartini and the Ashtabula County Board of Commissioners filed the instant action in prohibition with this court. Under the first claim in their petition, they asserted that Judge Yost had acted beyond the scope of his jurisdiction because the decision to appoint a new attorney for a county official must be made in an action separate from the specific case in which the county official is involved. Under their second claim, they alleged that the specific circumstances in the underlying case had not supported Judge Yost's decision to grant the motion for substitution of counsel.
Although Judge Yost was the sole respondent originally named in the prohibition petition, this court subsequently allowed Auditor O'Brien to intervene in this action as a respondent. Similarly, we also allowed the Andover Township Trustees to intervene as relators.
Prior to answering the prohibition petition, both Judge Yost and Auditor O'Brien moved this court to dismiss this action under Civ.R. 12(B)(6), arguing that Judge Yost had acted within the scope of his authority because, under certain circumstances, the issue of the substitution of counsel for a county official can be litigated in the same action in which that official is involved. In November 2000, this court rendered a judgment in which we overruled both motions to dismiss.
After Judge Yost and Auditor O'Brien had filed their respective answers to the prohibition petition, the parties were able to agree upon certain stipulations of facts. These stipulations were filed with this court, along with seventeen documents which were referenced in the stipulations. The substance of the stipulations and the documents have been summarized in the foregoing statement of facts.
Following the submission of the stipulations, the parties filed briefs addressing the final merits of the instant action.
 II.
Prior to addressing the merits of the two claims in prohibition, it is necessary to resolve a procedural dispute which arose while the parties were submitting their merit briefs. As part of her initial brief before this court, Auditor O'Brien has submitted her own affidavit which she wishes us to consider in addition to the stipulations of fact. In this affidavit, Auditor O'Brien refers to certain events which allegedly occurred after the mandamus action before Judge Yost was filed in October 1998. She argues that these events show that there was a conflict between herself and Prosecutor Sartini which supported Judge Yost's decision to grant her motion for substitution of counsel.
In her merit brief, Auditor O'Brien maintains that the submission of the affidavit became necessary because Prosecutor Sartini refused to include any reference to the alleged events in the stipulations of fact. In response, Prosecutor Sartini denies that he refused to include the additional facts in the stipulations. He further states that the facts in the affidavit were not included because Auditor O'Brien's counsel did not submit the proposed stipulations on these alleged events to him and the other attorneys in this case for review in a timely manner.
Upon reviewing the entire record in the instant case, we conclude that, regardless of the reason why the assertions in the affidavit were not included in the stipulations of fact, the affidavit of Auditor O'Brien is not properly before us in rendering our final determination in this case. This is because Auditor O'Brien failed to follow the proper procedure concerning the submission of evidence regarding facts to which the parties could not stipulate.
The record in the instant case shows that the parties' initial agreement to submit stipulations of fact was made during a telephonic conference which was held after the motions to dismiss had been overruled. Immediately after the conference, a magistrate of this court issued a judgment which contained the following language:
 "A telephonic conference was held in the instant matter on January 29, 2001. During the course of the discussion, counsel for the various parties agreed that this matter could be submitted to the Judges of this Court for final disposition on the merits predicated upon stipulations of facts. Pursuant to this procedure, the parties' proposed stipulations would constitute the only evidentiary submission to the Court, and the parties would then file briefs on the merits.
 "Accordingly, consistent with the discussion during the conference, counsel for the parties have until March 1, 2001, to submit stipulations of fact to this Court. If the parties are unable to stipulate as to all relevant facts in this matter, a second telephonic conference shall be held immediately to determine whether this matter shall go forward on motions for summary judgment, or proceed to trial.
 "If counsel for the parties are able to stipulate as to all relevant facts, each party's respective initial brief on the merits shall be due on, or before, March 15, 2001. Each party's respective response brief will then be due on, or before, March 29, 2001."[2]
 Pursuant to the foregoing procedure, a party in this action did not have the option of submitting an affidavit in conjunction with the stipulations of fact. The opening paragraph of the judgment stated that if the parties were able to agree on the facts, the resulting stipulations of fact would be the sole evidentiary submission to this court. The second paragraph then indicated that if the parties could not stipulate as to all of the relevant facts, the case would not go forward on the stipulations and a new procedure would have to be followed to dispose of the matter.
 Thus, if Auditor O'Brien and her counsel believed that the proposed stipulations of fact did not set forth all of the relevant facts, they should not have agreed to them and allowed this matter to go forward under the briefing schedule delineated in the judgment. Instead, they should have notified this court of the impasse, and the action could have then been set for trial or for the filing of motions for summary judgment. As Auditor O'Brien failed to follow the procedure stated in the judgment and expressly agreed to the stipulations of fact, her affidavit will not be considered in the disposition of the instant case.
 Nevertheless, we would hasten to add that the exclusion of the O'Brien affidavit will not affect the outcome of our final analysis. As was noted above, the averments in the affidavit pertain to the issue of whether an actual conflict of interest existed between Prosecutor Sartini and Auditor O'Brien. As will be discussed below, it is not necessary for this court to make a factual finding on this particular issue in order to resolve the specific dispute raised in the prohibition petition. Instead, the outcome of our analysis will turn upon whether Judge Yost predicated his determination upon the alleged existence of a conflict of interest.
 III. As framed by the parties' stipulation of fact, the primary issue before this court is: Under what circumstances does a common pleas judge have the power to appoint new counsel, in lieu of the county prosecuting attorney, to represent a county official in an action brought against her in her official capacity? Under the facts of the instant case, the decision to appoint new counsel was made as part of the same action in which the county official, Auditor O'Brien, was a party. Moreover, the decision was made in response to a motion to substitute which Auditor O'Brien did not file until Prosecutor Sartini had been representing her in the action for approximately one year.
Citing to specific provisions of the Ohio Revised Code, Prosecutor Sartini argues that the decision to substitute counsel can be made only in a separate action brought by the county prosecuting attorney and the board of county commissioners. In turn, he further argues that when the prosecuting attorney refuses to take the necessary steps to bring this separate action for the appointment of counsel, he can be compelled to do so only through a separate mandamus action. In response, both Judge Yost and Auditor O'Brien maintain that the appointment determination can be made in the same action involving the county official if a conflict of interest exists between the official and the prosecuting attorney.
The statutes cited by Prosecutor Sartini include R.C. 309.09(A) and 305.14(A). The former statute states that a county prosecuting attorney has a duty to defend any legal action in which another county official is involved. R.C. 309.09(A) also provides that "no county officer may employ any other counsel or attorney at the expense of the county, except as provided in section 305.14 of the Revised Code."
The latter statute gives a common pleas court the authority to authorize a board of county commissioners to employ separate legal counsel in behalf of a county official. However, R.C. 305.14(A) also states that this authorization can be given only "upon an application of the prosecuting attorney and the board of county commissioners. * * *"
In his written decision granting the motion to substitute in the underlying mandamus case, Judge Yost noted the existence of the procedure set forth in R.C. 305.14(A). Despite this, Judge Yost ultimately concluded that the fact that Prosecutor Sartini had not filed an application to substitute did not deprive him of the ability to rule upon Auditor O'Brien's motion. Specifically, Judge Yost held that a separate action on the appointment issue was not necessary under the circumstances of this case. In support of his holding, he cited State ex rel. Corriganv. Seminatore (1981), 66 Ohio St.2d 459.
In Corrigan, the county prosecuting attorney filed an action against the individual members of the county board of mental retardation to recover certain expenditures which the members had authorized. Since a board of mental retardation is generally considered a county entity for purposes of R.C. 309.09(A), the prosecuting attorney in Corrigan had a general obligation to represent the individual members of the board; however, because the prosecuting attorney had been responsible for maintaining the damages action, he clearly could not defend the board members in that particular case. Nevertheless, when the board members requested the appointment of new counsel under R.C. 305.14(A), the prosecuting attorney refused to file an application on the matter. Subsequently, the trial court in the damages action appointed a new attorney for the board members.
Following the appointment of new counsel, the trial court in Corrigan
granted the board members summary judgment on the merits of the damages claim. The case was then appealed to both the appellate court and the Supreme Court of Ohio. In upholding the trial court's decision to appoint new counsel, the Supreme Court first concluded that, under "ordinary" circumstances, a common pleas judge should never appoint new counsel for a county official unless the application procedure under R.C. 305.14(A) had been met. The court also emphasized that if the prosecuting attorney or the board of county commissioners refused to submit the necessary application under the statute, an action in mandamus could be brought to compel the performance of this statutory duty.In the second part of its analysis, though, the Corrigan court determined that the appointment of counsel in that particular case should be upheld because, even though an application under R.C. 305.14(A) had never been filed, the failure to follow the proper procedure had not been prejudicial:
 "While R.C. 305.14 contemplates a joint application of the prosecuting attorney and the board of county commissioners for such appointment, we find nothing in that statute which confers upon the prosecuting attorney the power to defeat the jurisdiction otherwise vested in the common pleas court to authorize appointment of counsel. Here, the prosecuting attorney not only failed to make the application but vigorously opposed appointment of other counsel, although admitting a conflict of interest exists.
 "Although theoretically the board of county commissioners could have taken action by resolution, an application to court upon behalf of the board of county commissioners of necessity would have been made by the prosecuting attorney, since, by virtue of R.C. 309.09, the prosecuting attorney is the attorney for the board of county commissioners. In short, failure of the [trial] court to act would have in effect surrendered to the prosecuting attorney the jurisdiction of that court to determine whether appointment of different counsel is in the best interests of the county.
 "If the prosecuting attorney and the board of county commissioners had made the joint application for appointment of counsel, as proper exercise of their duties would require, the same result would have ensued. The only possible distinction might be different counsel being appointed if the board of county commissioners had made the appointment. However, there is no demonstration of any prejudice resulting to anyone because of the manner of the appointment of counsel. * * *." (Footnote omitted.) Id. at 465-466.
 In discussing the Corrigan opinion in his decision, Judge Yost determined that, although the Corrigan
holding was not directly on point, it should be extended to the situation in the underlying case. However, in ruling upon the two motions to dismiss which were filed in the instant prohibition action, this court had the opportunity to consider the ramifications of the Corrigan opinion. We ultimately concluded that the Corrigan holding should be limited to the facts of that case:
 "At the outset, this Court would indicate that we are befuddled by the nature of the analysis in Corrigan. After stating that an application under R.C. 305.14(A) is ordinarily a prerequisite to the appointment of new counsel for a county official, the Corrigan court expressly states that a mandamus action would be an appropriate way to compel the county prosecuting attorney to submit the application. Given that a writ of mandamus cannot be granted when another adequate legal remedy can be employed to achieve the same result, see State ex rel. Manson v. Morris (1993), 66 Ohio St.3d 440, it follows that the Corrigan court believed that the filing of the application was a jurisdictional prerequisite which had to be met before a common pleas court could appoint new counsel. Stated differently, the mandamus reference supports that a common pleas court lacks subject matter jurisdiction to appoint new counsel for a county official in the absence of the required application.
 "Nevertheless, the Corrigan court then proceeds to engage in a harmless error analysis. This type of analysis seems totally inappropriate in regard to a question of subject matter jurisdiction. It is axiomatic that a court's final judgment in an action can subsequently be declared void if it is determined that that court lacked subject matter jurisdiction. We are unaware of any authority under which a judgment rendered under those circumstances is allowed to stand simply because the legal analysis in the judgment was correct.
 "In the years after the release of Corrigan, the Supreme Court has never extended the scope of its holding. Therefore, in light of the foregoing discussion, this Court concludes that the application of the Corrigan decision should be limited to the specific facts of that case.
 "Upon comparing the facts of the instant case to those in Corrigan, we further conclude that the cases are distinguishable in two respects. First, we would emphasize that Corrigan involved an instance in which there was an obvious conflict of interest. In relation to this point, it should be noted the basic holding of the Corrigan decision was set forth in the first paragraph of its syllabus:
 "`Application by both the prosecuting attorney and the board of county commissioners is a prerequisite to authorization by a court of common pleas pursuant to R.C. 305.14 of appointment of other counsel to represent a county officer, except where the prosecuting attorney has a conflict of interest and refuses to make application.' (Emphasis added.)
 "In the instant case, our review of Respondent Yost's judgment entry, a copy of which is attached to the prohibition petition, readily shows that his decision was not based upon a finding of a conflict of interest. Instead, Respondent Yost based the appointment solely upon the fact that Auditor O'Brien had lost confidence in Relator Sartini. In our opinion, although a loss of confidence might be a sufficient reason to grant the appointment of new counsel ultimately, it is not a sufficient reason to warrant ignoring the standard statutory procedure for such an appointment.
 "Second, this Court would indicate that, unlike the prosecuting attorney in Corrigan, Relator Sartini is not a party to the underlying action before Respondent Yost. Therefore, Relator Sartini could not bring an appeal from the judgment entry in question. Under these circumstances, it logically follows that the `appointment' issue should have been litigated in a separate mandamus action because, as a party to that case, Relator Sartini would have the right to appeal from any adverse decision."
 Upon reviewing the Corrigan decision again for purposes of this opinion, this court holds that the foregoing analysis, as set forth in our judgment entry overruling the motions to dismiss, was correct. Furthermore, given that the parties' stipulations of fact are generally consistent with the allegations set forth in the prohibition petition, we also hold that our analysis, which previously supported the conclusion that relators' petition stated a viable claim in prohibition, also supports a similar outcome on the final merits of this case; i.e., Judge Yost did act beyond the scope of his authority in granting the motion to substitute because his decision was not based upon the existence of a conflict of interest.
Although Judge Yost and Auditor O'Brien do not directly challenge our analysis of Corrigan, they do contend that the application of Corrigan
has been extended. They submit that a common pleas judge has the authority to rule upon a motion to substitute counsel any time an action involving a county official is pending before him. In support of this argument, they cite State ex rel. Jefferson Cty. Children Serv. Bd. v.Hallock (1986), 28 Ohio St.3d 179.
In Hallock, a juvenile judge asked the county prosecuting attorney to investigate possible criminal misconduct at the facilities of the children's services board. While the investigation was pending, the board of county commissioners filed an application under R.C. 305.14(A) for the appointment of new counsel for the board. The prosecuting attorney withdrew his support for the application, despite the existence of a clear conflict of interest. After a judge of the general division of the common pleas court granted the application, the juvenile judge refused to recognize the new attorney's entry of appearance before that court.
The children's services board then brought an action in prohibition in the Supreme Court of Ohio, arguing that the juvenile judge had lacked jurisdiction to prevent the new attorney from representing it. In granting the writ for the board, the Hallock court first held that the general division judge had acted within the scope of his jurisdiction in appointing new counsel, even though the prosecuting attorney had not joined the application under R.C. 305.14. The court emphasized that the fact that the prosecuting attorney was investigating the board gave the general division judge the ability to consider the application without the acquiescence of the prosecuting attorney.
Since the appointment of new counsel was valid, the Hallock court further concluded that the juvenile judge was bound by the appointment and lacked the jurisdiction to issue any decision in regard to the matter:
 "The [juvenile judge's] action was not made pursuant to an application or any other matter pending before [him]. * * * It is axiomatic that a court's jurisdiction is limited to actions before it. `An action is an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense.' R.C. 2307.01. Since no application was pending before [the juvenile judge], he had no jurisdiction to issue this order." Id. at 182.
 Citing to the foregoing language in Hallock, Judge Yost and Auditor O'Brien maintain that a motion to substitute counsel is a proper means to seek new counsel for a county official if there is any type of proceeding otherwise pending before the court. However, while we would agree that a motion to substitute can be used to raise the "new counsel" issue if a conflict of interest does exist between the county official and the prosecuting attorney, this court does not agree that this holding somehow extends the application of Corrigan. There is nothing in the language of Hallock to support the conclusion that the procedure of R.C. 305.14 can be ignored when a conflict of interest does not exist. At best, Hallock merely adds another requirement which must be met before a different procedure can be used in lieu of the procedure delineated in R.C. 305.14; i.e., a conflict of interest and a pending proceeding.
In addition to the foregoing, Auditor O'Brien asserts that, notwithstanding Corrigan, Judge Yost's actions in the underlying matter were valid because he was acting pursuant to his inherent power as a judge. Yet, although we would concur that a common pleas judge has the authority to regulate the practice of law before him, the use of any inherent power cannot conflict with a valid statute of this state. Obviously, R.C. 305.14 would be significantly emasculated its requirements had to always yield to a judge's inherent power.
Finally, both Judge Yost and Auditor O'Brien argue that Judge Yost acted within the scope of his jurisdiction because he actually found that a conflict of interest did exist. In our prior judgment entry on the motions to dismiss, this court concluded that Judge Yost had predicated his ruling upon the finding that Auditor O'Brien had lost her confidence in Prosecutor Sartini. Our conclusion was based on the following three paragraphs in Judge Yost's judgment:
 "Ordinarily, once an attorney has consulted with one party on a particular controversy, he is precluded from later representing an opposing party on the same matter. In this case, the logical party to complain of a conflict would be the trustees, since he first talked with them, but is now representing the auditor. The prosecuting attorney recognized this conflict in his letter of October 15, 1998, to the auditor. Given that the prosecutor did advise one party to this case, prior to undertaking representation of the opposing party, the only real question before the court in this case is whether the county auditor could waive the conflict by her agreement to have the prosecutor proceed on her behalf, and her acquiescence in that representation for more than a year.
 "The court concludes that the prosecuting attorney satisfied all ethical obligations by making a full disclosure to the county auditor of his prior involvement with the Andover Township Trustees, and specifically offering her the option to request other counsel to represent her in this case. The court further concludes that the auditor fully understood the nature of the conflict and the circumstances of the prosecutor's involvement with the trustees, and that she did knowingly waive any objection to representation by the county prosecutor in this case.
 "Nevertheless, there is one remaining, nagging, issue that concerns the court: maintaining confidence in the integrity of the legal process. Obviously, at some point, and no doubt for reasons unrelated to this particular case, the auditor has lost confidence in her statutory counsel, to the point that she now wishes to expend additional taxpayers' dollars to hire outside private counsel to represent her. Regardless of the auditor's motives, it is difficult for any attorney to effectively represent a client when an adversary relationship has developed between them. Unfortunately, we now have a situation in which the auditor has attacked the integrity of her counsel and which could cast a cloud on this entire proceeding, regardless of the outcome. Although the auditor clearly should have made her request for outside counsel a year and a half ago, when that option was offered to her, the court, in the exercise of its discretion, finds that her belated request should be allowed, in order to promote greater confidence in the legal process."
 In the first two paragraphs of the foregoing quote, Judge Yost held that, although a conflict of interest did exist between Prosecutor Sartini and Auditor O'Brien when the underlying mandamus case was filed in October 1998, that conflict was waived by Auditor O'Brien when she allowed Prosecutor Sartini to represent her for one year. In the third paragraph, Judge Yost then concluded that Auditor O'Brien was still entitled to have new counsel because she had lost confidence in Prosecutor Sartini and had an adversarial relationship with him. As to the basis for this lost of confidence, Judge Yost did not state that Auditor O'Brien's present attitude stemmed from the prior conflict of interest which she had waived. Instead, he merely stated that Auditor O'Brien's attitude was "no doubt" caused by reasons unrelated to the mandamus case.
In attempting to submit her own affidavit with her initial merits brief, Auditor O'Brien intended to prove to this court that a new conflict of interest had developed between her and Prosecutor Sartini based on events which occurred after the mandamus case had begun. However, Judge Yost never referred to these new events in his judgment and never found that a new conflict of interest had developed. The only conflict found by Judge Yost was the one which existed at the beginning of the mandamus case. Thus, because our determination of Judge Yost's jurisdiction must be based on the specific findings he made, the fact that there may have been a new conflict is irrelevant to the outcome of this case.
Auditor O'Brien also asserts in her merits brief that, even though she waived the initial conflict of interest stemming from Prosecutor Sartini's consultation with the Andover Township Trustees, the existence of this conflict ultimately caused her to lose her faith in him. Again, our review of Judge Yost's judgment shows that he never made this specific finding. However, even if he had, the outcome of our analysis would not change.
By waiving the initial conflict of interest, Auditor O'Brien essentially placed herself back into the same position which any country official would be in when she is being represented by the county prosecuting attorney. Because two of a prosecutor's primary duties consist of providing legal advice to county officials concerning inter- department matters and investigating possible criminal misconduct on the part of those officials, it is highly probable that an official and the prosecutor could have serious disagreements during the course of their tenures. Such disagreements certainly could cause the county official to doubt whether the prosecutor will fully represent her in new legal actions which might arise. However, prior disagreements cannot be considered a present conflict of interest which warrants the application of Corrigan.
Pursuant to R.C. 309.09(A), a county official is required to accept the representation of the county prosecutor unless she is willing to pay for her own counsel or a separate attorney is appointed under the procedure in R.C. 305.14(A). In enacting the former statute, the General Assembly was certainly aware of the conflicts and disagreements which can readily develop between an official and the prosecutor. Despite this, they enacted a statutory scheme under which the prosecutor is to act as the sole attorney for a county official unless the specific procedure under R.C. 305.14(A) is followed.
Accordingly, this court concludes that, unless the specific factual scenario of Corrigan is present in a given case, a common pleas judge does not have jurisdiction to appoint a new attorney for a county official in the absence of the submission of a proper application under R.C. 305.14(A). That is, unless the prosecuting attorney and the board of county commissioners have filed the necessary application, a common pleas judge can appoint new counsel only when: (1) there is a present conflict of interest between the prosecutor and the county official; and (2) the prosecutor has the ability to take a direct appeal from the counsel determination because he is a party to the case in which the official is involved. If these two circumstances do not exist, and the prosecuting attorney refuses to submit the necessary application, the county official's only remedy is the filing of a mandamus action to compel the prosecutor to perform his statutory duty.
In the instant case, because Auditor O'Brien waived the initial conflict of interest between herself and Prosecutor Sartini at the beginning of the underlying mandamus case, no present conflict of interest existed on the date she submitted her motion to substitute counsel. Furthermore, because Prosecutor Sartini was not a party to the underlying mandamus action, he could not bring a direct appeal from the determination made by Judge Yost. Thus, as neither of the circumstances in Corrigan was present in the instant case, Judge Yost did not have jurisdiction to rule upon Auditor O'Brien's motion to substitute counsel.
 IV.
To be entitled to a writ of prohibition, a relator must establish that: (1) a judicial officer is preparing to exercise his judicial authority; (2) the use of that authority is not permissible under the law; and, (3) the failure to grant the writ will result in an injury for which there is no adequate legal remedy. State ex rel. Suburban Constr.Co. v. Skok (1999), 85 Ohio St.3d 645, 646. In regard to the second element of a prohibition claim, it has been held that this element can be deemed to have been satisfied only when the lack of jurisdiction is patent and unambiguous. State ex rel. Red Head Brass, Inc. v. HolmesCty. Court of Common Pleas (1997), 80 Ohio St.3d 149, 152. If the jurisdictional problem is not patent and unambiguous, a trial court, which has general subject matter jurisdiction, can decide whether it has the authority to proceed in a given case, and a party to the case can contest that decision in a direct appeal. State ex rel. Hunter v. SummitCty. Human Resource Comm. (1998), 81 Ohio St.3d 450, 451. However, if the lack of jurisdiction is patent and unambiguous, the writ will lie to prohibit the further exercise of power and to correct any error which had previously been made. State ex rel. Litty v. Leskovyansky (1996),77 Ohio St.3d 97, 98.
In regard to the first prohibition claim in the instant case, this court holds that Prosecutor Sartini, the Ashtabula County Board of Commissioners, and the Andover Township Trustees have satisfied the three elements for this claim. First, the parties' stipulations of fact demonstrate that Judge Yost has not only exercised his authority in ruling upon the motion to substitute, but that he also intends to further exercise his power by allowing new counsel to represent Auditor O'Brien in the underlying mandamus action. Second, pursuant to our analysis under the prior section of this opinion, we hold that Judge Yost patently and unambiguously lacked jurisdiction to appoint new counsel because an application for such an appointment under R.C. 305.14(A) was not before him. Third, an adequate legal remedy does not exist because Prosecutor Sartini and the Ashtabula County Board of Commissioners cannot take a direct appeal from Judge Yost's decision.
As an aside, this court would indicate that the actual merits of the "counsel" determination were not properly before us in the context of this specific case. If Auditor O'Brien decides to pursue a separate mandamus action to compel Prosecutor Sartini and the Ashtabula County Board of Commissioners to file an application under R.C. 305.14(A), the final merits of that issue can be decided in that proceeding. Moreover, the determination in that separate case could then be appealed to this court for review. Accordingly, judgment must be entered in favor of Judge Yost and Auditor O'Brien as to the second claim in the prohibition petition.
As to the first claim in the prohibition petition, judgment is hereby rendered in favor of relators, Ashtabula County Prosecutor Thomas L. Sartini, the Ashtabula County Board of Commissioners, and the Andover Township Trustees. It is the order of this court that a writ of prohibition shall be issued against Judge Gary L. Yost of the Ashtabula County Court of Common Pleas. Pursuant to this writ, Judge Yost shall be required to vacate his judgment of May 5, 2000, granting Auditor Sandra O'Brien's motion to substitute counsel, and to refrain from taking any further steps to permit new counsel to represent Auditor O'Brien in the underlying mandamus action.
 ____________________________ JUDGE ROBERT A. NADER
FORD, J., concurs, O'NEILL, P.J., dissents with Dissenting Opinion.
[1] In addition to Judge Yost, Ashtabula County Auditor Sandra O'Brien is also a respondent to this action. For the sake of brevity and clarity, the various relators and respondents will be referenced by their proper name in the remainder of this opinion.
[2] None of the parties to this case filed objections in regard to the procedure set forth the magistrate's judgment. Accordingly, the requirements of the judgment were binding upon the parties.